UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| AMINA HASKIC,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:23-CV-351 JD |

**OPINION AND ORDER**

Plaintiff Amina Haskic appeals the denial of her claim for disability insurance benefits. For the following reasons, the Court will remand this matter to the Commissioner for further proceedings consistent with this opinion.

**A. Background**

Ms. Haskic filed an application for disability insurance benefits, alleging disability beginning January 28, 2020. Ms. Haskic's application was denied by the Indiana Disability Determination Bureau on June 16, 2021, and again on April 19, 2022, after reconsideration review. Her application was then denied by a Social Security Administration Administrative Law Judge ("ALJ"). Ms. Haskic sought review of the ALJ's decision by the Appeals Council, but that request was denied. Ms. Haskic then timely filed this request for judicial review of the Commissioner's decision.

Ms. Haskic indicated her disability was caused by mental impairments due to schizoaffective disorder/chronic schizophrenia and anxiety disorder (R. at 18). The ALJ found

that Ms. Haskic had some moderate impairments but that she had not been disabled since January 28, 2020.

At Step Two of the analysis, the ALJ found that Ms. Haskic's mental health issues consisted of "moderate" limitations in all four of the Paragraph B criteria used to rate the severity of mental impairments. The four Paragraph B criteria are: (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. (R. at 18–19.) In formulating Ms. Haskic's Residual Functional Capacity ("RFC"), the ALJ found that Ms. Haskic's mental health issues were supported by medical evidence in the record but did not rise to the level of a severe impairment. The evidence included two consultative examinations, one in June 2021 by Dr. Caryn Brown, PsyD, and one in April 2022 by Dr. Paula Neuman, PsyD. The ALJ found both of these examinations to be "somewhat persuasive." (R. at 25.)

Dr. Brown opined that Ms. Haskic's ability to learn, remember, and understand simple instructions was limited by her anxiety, her ability to attend, concentrate, and complete simple tasks was limited, her ability to interact with the public or engage in a work setting was compromised, and she might benefit from assistance in managing funds. (R. at 413.) The ALJ found that this opinion generally supported finding deficits in Ms. Haskic's mental functioning but lacked specificity in helping formulate the RFC. (R. at 25.)

Dr. Neuman opined that Ms. Haskic was providing minimal effort and appeared to be attempting to manipulate the presentation of her cognitive ability. (R. at 572.) However, Dr. Neuman also opined that Ms. Haskic's judgment and common sense were limited, and she may require direct supervision. (*Id.*). The ALJ found that the lack of cooperation and incorrect

answers were not consistent with the overall record, which showed deficits in Ms. Haskic's mental functioning but not to the extent she was demonstrating in the examination. (R. at 25.)

### B. Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The Court will affirm the Commissioner's denial of disability benefits if it is supported by substantial evidence. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court will affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial evidence determination, the Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). The Court does, however, critically review the record to ensure that the ALJ's decision is supported by the evidence and contains an adequate discussion of the issues. *Id.* The ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection; he may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must also "articulate at some minimal level his analysis of the evidence" to permit informed review. *Id.* Ultimately, while the ALJ is not required to address every piece of

evidence or testimony presented, he must provide a "logical bridge" between the evidence and his conclusions. *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009).

### C. Standard for Disability

Disability benefits are available only to individuals who are disabled under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations contain a five-step test to ascertain whether the claimant has established a disability. 20 C.F.R. §§ 404.1520, 416.920. These steps require the Court to sequentially determine:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform relevant past work; and
5. Whether the claimant can perform other work in the national economy.

*Id.; Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, the Commissioner acknowledges disability. *See* 20 C.F.R. §§ 404.1520, 416.920. However, if a listing is not met or equaled, the ALJ must assess the claimant's residual functional capacity ("RFC") between steps three and four. The RFC is then used to determine whether the claimant can perform past work

under step four and whether the claimant can perform other work in society at step five. *See id.* The claimant has the burden of proof in steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

### D. Discussion

Ms. Haskic raises several arguments in support of her request for remand, including that the ALJ did not properly evaluate the medical expert opinions, the ALJ did not properly consider her subjective report of her symptoms, and the ALJ did not appropriately implement the Administration guidance in document SSR-11-2p.

The Court concludes that Ms. Haskic succeeds on the first argument and that a remand is required. As such, the Court will decline to address the remaining issues in this order and leave them to be resolved upon rehearing if necessary.

The Court finds that the ALJ erred in his handling of the medical opinions of Dr. Neuman and Dr. Brown by failing to comply with the Social Security Administration's own regulations for evaluating medical opinions. An ALJ "must explain 'how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case records." *Willis v. Acting Comm'r of Soc. Sec.*, 2022 WL 2384031, *3 (N.D. Ind. June 30, 2022) (quoting 20 C.F.R. § 404.1520c(b)). In evaluating the persuasiveness of this evidence, the ALJ must consider a set of factors outlined in the governing regulation, of which supportability and consistency are the most important. *Id.* The ALJ is required to explicitly discuss supportability and consistency, and a failure to do so requires remand. *Id.* ("these are factors the ALJ must

explicitly discuss, … "Failure to adequately discuss supportability and consistency requires remand.") (citing to *Tammy M. v. Saul*, 2021 WL 2451907, at *7–8 (N.D. Ind. June 16, 2021)). Supportability is a concept which refers to the degree to which an opinion is supported by the examiner's own objective medical evidence and explanation. 20 C.F.R. § 404.1520c(c)(1). Consistency refers to the degree to which the opinion is consistent with other evidence from the record including medical and non-medical sources. 20 C.F.R. § 404.1520c(c)(2).

The ALJ assigned a persuasiveness rating to each of the medical opinions, appraising each as "somewhat persuasive," but did not meaningful discuss their reasoning for this conclusion. In particular, the ALJ's failure to discuss the supportability or consistency of this opinion is clearly contrary to the governing regulations. *Willis*, 2022 WL 2384031 at *3 (citing to *Tammy M.*, 2021 WL 2451907 at *7–8).

The Commissioner's response does not dispute this failing by the ALJ. Rather, he concedes this point to indirectly[1] argue that any error was harmless because Ms. Haskic did not specify how the ALJ's failure to address the consistency and supportability' of the opinions "may have adversely affected the determination of her claim for benefits." (DE 17 at 5.)

The Court will conduct the harmless error analysis in a moment, but finds it necessary to emphasize a few points first. It is the Commissioner's own regulations which require the ALJs, who are operating under the aegis of his authority, to consider a set of factors (including supportability and consistency) in evaluating medical opinions. *Willis*, 2022 WL 2384031 *3 (quoting 20 C.F.R. § 404.1520c(b)). It has previously been noted in this District that a failure to

---

[1] The Commissioner's brief does not use the term harmless error, nor does it provide the relevant legal standard, nor citation to authority holding harmless error is applicable to the instant circumstances. In general arguments which lack supporting legal authority are waived. *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1062–63 (7th Cir. 2020). That said, the applicability of harmless error to ALJ evaluations of medical opinions is well established and the Court will insert the relevant legal authority to resolve the question, rather than rely on waiver.

6

comply with the Administration's own regulations, by not explicitly discussing supportability and consistency, requires remand. *Id.* ("these are factors the ALJ must explicitly discuss, … "Failure to adequately discuss supportability and consistency requires remand.") (citing to *Tammy M. v. Saul*, 2021 WL 2451907, at *7–8 (N.D. Ind. June 16, 2021)). This attaches a presumption that failure to comply with these specific regulations requires remand. Consequently, the Commissioner starts off on the wrong foot by sidestepping the fact that the ALJ erred and attempting to shift the burden to the claimant to show why the Administration's failure to comply with its own rules matters. The failure matters because the clearly established law in this Circuit says that this particular failure requires remand.

      The Court recognizes the considerable burden which ALJs shoulder on a daily basis. Further, the Court recognizes that their decisions are entitled to the benefit of harmless error analysis when it comes to evaluating medical opinions. *McKinsey v. Astrue*, 641 F.3d 884, 891–92 (7th Cir. 2011) (finding harmless error when the ALJ failed to assign weight to a state agency physician's opinion); *Jason M. v. Kijakazi*, 2022 WL 2071096, *5–*6 (S.D. Ind. June 9, 2022) (applying harmless error analysis to alleged failure to consider a medical opinion). At the same time, when the Commissioner decides to argue in favor of affirming an ALJ, the Commissioner should candidly recognize the facts of the case before them and directly and cogently present the legal theory upon which they seek affirmance.

      With those points noted, the Court will turn to the question of harmless error. As noted above, ALJ errors in the handling of medical opinions are subject to a harmless error analysis. *McKinsey*, 641 F.3d at 891–92. An error is harmless if, upon examination of the record, the reviewing Court can "predict with great confidence what the result of the remand will be." *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022). The Court cannot reach such a conclusion

because of ambiguities in how the ALJ considered Dr. Brown and Dr. Neuman's medical opinions in their decision.

In particular, it is unclear how the ALJ reconciles the two opinions of Dr. Neuman and Dr. Brown into his analysis given each doctor made what appear to be substantively different findings. This means the Court cannot identify and review what "logical bridge" the ALJ drew between the medical opinions and the RFC determination. *See Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009) (ALJs are required to establish a logical bridge between the evidence in the record and their ultimate conclusions). Dr. Neuman's opinion concluded intact "orientation, ability to sustain concentration and persistence, physical adaptive tasks, and cognitive adaptive skills…but that Haskic's judgment and common sense were limited and she may require direct supervision". That opinion contrasts with Dr. Brown's opinion of Ms. Haskic being limited in her ability to learn, remember and understand simple instructions, a limited ability to attend and complete simple tasks, and a compromised ability to interact with others in public or a work setting. Crucially, it is not that the examiners assessed different levels of impairment across the same domains. Instead, it appears they found different domains to be impaired with Dr. Neuman concluding Ms. Haskic had fewer types of impairments relative to Dr. Brown's evaluation. If the ALJ adopted Dr. Neuman's opinion, that Ms. Haskic only had a few limitations, this would consequently adjust the parameters of the RFC and increase the number of jobs in the national economy which Ms. Haskic could perform. As such, it is critically important that the ALJ clearly explain how he weighed and resolved the conflicts among the medical opinions to formulate the RFC. The failure to provide such explanation leaves the Court unable to trace the ALJ's reasoning in formulating the RFC and compels remand.

The Court will recognize that there is a thin reed of potential reconciliation in the ALJ's comment that "the claimant's lack of cooperation and incorrect answers were not consistent with the overall record, which does show deficits in mental functioning but not to the extent the claimant apparently tried to demonstrate in this examination." (R. at 25.) This could be interpreted to suggest that, to the extent Dr. Neuman questioned whether Ms. Haskic had certain impairments at all, the ALJ found this portion of her opinion to be contrary to the record showing Ms. Haskic did not have those impairments. It could be further inferred that to the extent Dr. Neuman disagreed with Dr. Brown about whether certain impairments were present, the ALJ found Dr. Brown's opinion more persuasive and more consistent with the medical evidence in the record. The problem is the ALJ did not make an explicit finding to this end and there is no basis for the Court to recognize them now. Nor did the ALJ conduct explicit consideration of the supportability and consistency of each opinion which would provide further contextual guidance as to how he weighed each opinion. As such, the Court will not make this series of inferences on the Commissioner's behalf absent the necessary discussion by the ALJ.

Even if the Court made those inferences on behalf of the ALJ, remand would still be required as it is manifestly unclear how to reconcile the respective opinions with impairments both examiners agreed Ms. Haskic possessed. Dr. Neuman's opinion that Ms. Haskic may require direct supervision, contrasted with Dr. Brown's assessment that Ms. Haskic's ability to interact with others in a work setting is "compromised." There is a clear tension between a need for direct supervision and the compromised ability to interact with others, which would include supervisors. There may be ways to reconcile these at-odds assessments. Explicit ALJ findings on the supportability and consistency of each opinion would provide clues as to how to reconcile

them. But the ALJ did not perform any such reconciliation and it is not the Court's role to do so now.

Given the unreconciled conflicts between medical expert opinions in the ALJ's decision, the Court cannot predict with great confidence what the result of this matter would be on remand. As such the Court cannot conclude the ALJ's errors in not conducting an explicit supportability and consistency analysis for each opinion, which could help resolve the tensions, were harmless errors.

### E. Conclusion

Accordingly, for the reasons stated herein, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: July 1, 2024

　　　　　　　　　　　　　　　　　　/s/ JON E. DEGUILIO
　　　　　　　　　　　　　　　　　　Judge
　　　　　　　　　　　　　　　　　　United States District Court